**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 11-cv-03320-REB-MEH

PENELOPE THOME and
DENNIS W. THOME,

    Plaintiffs,

v.

ALAN L. COOK, et al.

    Defendants.

## ORDER GRANTING MOTION TO DISMISS

**Blackburn, J.**

This matter is before me on the defendants' **Defendants' Motion to Dismiss First Amended Complaint Based on Absolute and Qualified Immunity and for Lack of Subject Matter Jurisdiction** [#64][1] filed June 20, 2012.  The plaintiffs filed a response [#71], and the defendants filed a reply [#75].  I grant the motion.

### I. JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question) and § 1367 (supplemental).

### II. STANDARD OF REVIEW

Defendants' motions raise issues under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  A motion to dismiss under Fed. R. Civ. P. 12(b)(1) may consist of either a facial or a factual attack on the complaint.  ***Holt v. United States***, 46 F.3d 1000, 1002

---

[1] "[#64]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

(10th Cir. 1995).  Because defendants' motion presents a facial attack, I must accept the allegations of the complaint as true.  *Id*.  Plaintiff bears the burden of establishing that subject matter jurisdiction exists.  ***Henry v. Office of Thrift Supervision***, 43 F.3d 507, 512 (10th Cir. 1994); ***Fritz v. Colorado***, 223 F.Supp.2d 1197, 1199 (D. Colo. 2002).  In this case, the question of subject matter jurisdiction arises in relation to the Colorado Governmental Immunity Act.

In considering a motion under Fed. R. Civ. P. 12(b)(6), I must determine whether the allegations in the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a).  I must accept all well-pleaded allegations of the complaint as true. ***McDonald v. Kinder-Morgan, Inc.***, 287 F.3d 992, 997 (10th Cir. 2002).  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." ***Fernandez-Montes v. Allied Pilots Association***, 987 F.2d 278, 284 (5th Cir. 1993); ***see also Burnett v. Mortgage Elec. Registration Sys., Inc.***, ___ F.3d ___, ____, 2013 WL 386283, *2 - *3  (10th Cir. 2013); ***Ruiz v. McDonnell***, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), ***cert. denied***, 538 U.S. 999 (2003).  I review the challenged portion of a complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" ***Ridge at Red Hawk, L.L.C. v. Schneider***, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 570 (2007)); ***see also Ashcroft v. Iqbal***, 556 U.S. 662 (2009); ***Burnett***., ___ F.3d ____, 2013 WL 386283, *2 - *3.  "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

2

support for *these* claims." *Id.* (emphases in original).[2] Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." ***Dias v. City and County of Denver***, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting ***Twombly***, 550 U.S. at 556) (internal quotation marks omitted).

### III. SUMMARY OF ALLEGATIONS

Plaintiff Penelope Thome is a licensed professional counselor in the state of Colorado. On May 15, 2008, the Colorado Board of Licensed Professional Counselor Examiners (the Board) filed formal charges against Ms. Thome impugning her practice as licensed professional counselor. ¶ 48.[3] The Board alleged five violations of applicable standards and requirements. ¶ 49. In November 2009, a hearing was conducted before a Colorado Administrative Law Judge (ALJ). On December 14, 2009, the ALJ issued a decision finding that none of the charges against Ms. Thome was supported by the evidence and advising the Board that no disciplinary action should be

---

[2] ***Twombly*** rejected and supplanted the "no set of facts" language of ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Tenth Circuit clarified the meaning of the "plausibility" standard:

> "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.
>
> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."

***Robbins v. Oklahoma***, 519 F.3d 1242, 1247-48 (10th Cir. 2008) (quoting ***Twombly***, 127 S.Ct. at 1974; internal citations and footnote omitted).

[3] I refer to the complaint [#35] by paragraph number.

3

taken against Ms. Thome. ¶ 68. The Board filed exceptions, stating that all five alleged violations were supported by the evidence.

On March 19, 2010, the Board heard arguments on these issues. ¶ 71. On June 10, 2010, the Board issued an order dated March 29, 2010. ¶ 73. In the order the Board affirmed and adopted the findings of fact of the ALJ. *Amended complaint* [#35], Exhibit 4, CM/ECF p. 26. In addition, the Board affirmed and adopted the conclusions of law of the ALJ concerning counts 1, 3, 4, and 5. *Id.*

Addressing count 2, the Board concluded that Ms. Tome had violated Board Rule 18(g). *Id.*, CM/ECF pp. 26 - 28. The Board noted that the Notice of Charges in the matter did not specifically allege a violation of Rule 18(g), but found that the Notice did allege conduct amounting to a violation of Rule 18(g). *Id.*, CM/ECF p. 27. Based on that violation, the Board imposed a sanction against Ms. Thome. *Id.* The board concluded that a "stipulated letter of admonition is appropriate." *Id.* In addition, the Board ordered Ms. Thome to complete 20 units of continuing education on certain topics. *Id.*

On July 6, 2010, Ms. Thome filed a notice of appeal with the Colorado Court of Appeals. ¶ 91. The next day, the Board, through its counsel, tendered the Board's letter of admonition to the National Practitioner Data Bank and the Healthcare Integrity and Protection Data Bank. ¶ 92. Ms. Thome contends that the letter of admonition contained false information, including a statement that Ms. Thome had violated Rule 18(g). ¶ 92.

On December 28, 2010, while the appeal was pending, the Board issued a Clarified Final Board Order. *Amended complaint* [#35], Exhibit 6. Addressing count 2, the board changed the sanction imposed on Ms. Thome. *Id.*, p. 4. The Board removed

4

the language "stipulated letter of admonition," apparently concluding that such a stipulated letter was not authorized under applicable law. *Id.* Instead, the Board stated that it admonished Ms. Thome. *Id.* In addition, the Board ordered that Ms. Thome be on probationary status for one year and that during the probationary period Ms. Thome complete 20 units of continuing education on specified topics. *Id.*

Ultimately, on February 23, 2012, the Colorado Court of Appeals reversed the Board's orders and vacated the Board's sanction of Ms. Thome. The Court of Appeals concluded that it was improper for the Board to find, after the ALJ's decision, that Ms. Thome had violated Rule 18(g). *Response* [#14-1], Exhibit 1 (***Thome v. Colorado***, No. 10CA1396 (Colo. App. February 23, 2012)). This is true, in part, because the Notice of Charges in the matter did not specifically allege a violation of Rule 18(g). *Id.* Ms. Thome is no longer subject to any sanction imposed by the Board. On March 27, 2012, the Board issued an Amended Final Board Order. In that order, the Board vacated the disciplinary action against Ms. Thome. As ordered by the Court of Appeals, the Colorado Department of Regulatory Agencies asked the National Practitioner Data Bank to remove Ms. Thome's letter of admonition from the data bank. ¶ 127.

In their complaint, the plaintiffs allege a "long term and wide reaching conspiracy (by the defendants) to ensure that Ms. Thome was charged, tried, and professionally censured, despite the fact that the administrative law judge found no evidence to support any of the five counts which were brought against Ms. Thome . . .." ¶ 29. Ms. Thome and her husband assert several claims:

1. A claim under 42 U.S.C. § 1983, alleging violation of Ms. Thome's right to due process of law;

2. A claim for unconstitutional application of certain state statutes. This appears to be an alternative iteration of the due process claim;

5


3. A state law claim of extreme and outrageous conduct;

4. A state law claim of abuse of process and malicious prosecution.

5. A state law claim for fraud;

6. A state law claim of civil conspiracy to commit fraud;

7. A state law claim of libel per se;

8. A state law claim of loss of consortium by Ms. Thome's husband.

## IV.  ANALYSIS

### A.  Judicial Immunity

Judges acting in their judicial capacity are absolutely immune from civil lawsuits based on their actions, unless the judge was acting clearly without any colorable claim of jurisdiction.  ***Stump v. Sparkman***, 435 U.S. 349, 356-57 (1978).  Judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff."  ***Cleavinger v. Saxner***, 474 U.S. 193 (1985) (quoting ***Bradley v. Fisher***, 80 U.S. (13 Wall.) 335, 347 (1872)).  "A judge is immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."  ***Moss v. Kopp***, 559 F.3d 1155, 1163-64 (10th Cir. 2009) (internal quotations and citations omitted).  A judge lacks immunity only when he or she acts in the "clear absence of all jurisdiction," ***Bradley***, 80 U.S. (13 Wall.) at 351, or performs an act that is not "judicial" in nature.  ***Sparkman***, 435 U.S. at 360.

In ***Horwitz v. State Bd. of Med. Examiners of State of Colo.***, 822 F.2d 1508 (10th Cir. 1987), the United States Court of Appeals for the Tenth Circuit held that the Board of Medical Examiners is entitled to judicial immunity for claims based on disciplinary decisions made by the board.  The Board of Medical Examiners is the state

6

body empowered to license physicians and to take disciplinary action against them. *Id*. at 1509.  In *Horwitz* the plaintiff was a physician whose license was suspended summarily by the board concurrent with the decision by the board to initiate a formal complaint against the Dr. Horwitz. *Id*. at 1510.  A hearing officer later found in favor of Dr. Horwitz on 42 of the 44 allegations in the complaint and found against Dr. Horwitz on only two of the allegations. *Id*.  The hearing officer considered those two allegations to be minor. *Id*.  In its final order, the board "in part affirmed the hearing officer's decision, in part modified the decision and in part included independent findings. The Order placed Dr. Horwitz on a one-year probation, subject to supervision. [The board] also imposed certain requirements." *Id*.

After completion of his appeal to the Colorado Court of Appeals, Dr. Horwitz filed suit against the Board of Medical Examiners and its members, alleging he had been subjected to unfounded complaints, summarily suspended from the practice of podiatry in violation of his rights under the Fourteenth Amendment to due process, and defamed and subjected to outrageous conduct. *Id*.  The board argued that it was entitled to judicial immunity because "all of the steps from the summary suspension through the final decision of the hearing panel constituted (an) adjudicative scheme found in *Butz* to confer absolute immunity on executive-agency officials." *Id*. (*citing Butz v. Economou*, 438 U.S. 478 (1978)).

Addressing the Board of Medical Examiner's claim of judicial immunity, the *Horwitz* court held:

> We conclude that under the *Butz* court rationale, the defendant Board members, who performed statutory functions both adjudicatory and prosecutorial in nature, are entitled to absolute immunity from damages liability under 42 U.S.C. § 1983. There exists a strong need to insure that individual Board members perform their functions for the public good

7

> without harassment or intimidation. There exist adequate due process safeguards under Colorado law to protect against unconstitutional conduct without reliance upon private damages lawsuits. It is important to insulate Board members from political influences in meeting their adjudicatory responsibilities in the adversarial setting involving licensure to practice medicine. Public policy requires that officials serving in such capacities be exempt from personal liability.

*Id*. at 1515.

The administrative proceedings against Dr. Horwitz are directly analogous to the administrative proceedings undertaken by the Board against Ms. Thome. Like Dr. Horwitz, Ms. Thome faced a professional disciplinary proceeding initiated by the state board which is authorized to issue and to regulate her professional license.  The charges against Ms. Thome were heard by an administrative law judge, who issued a ruling.  Similar to Dr. Horwitz's case, the Board reviewed the decision of the ALJ and amended it in some respects.  Like Dr. Horwitz, Ms. Thome appealed the Board's decision to the Colorado Court of Appeals, arguing that the Board had acted improperly.  Ms. Thome succeeded in getting the Board's decision reversed by the Colorado Court of Appeals.  Essentially, these circumstances are the same circumstances addressed in **Horwitz**.  The actions of the Board in the administrative proceedings concerning Ms. Thome fell within the purview of judicial immunity and, to the extent the Board acted in the role of prosecutor, the ken of prosecutorial immunity accorded to the Board.

I note the plaintiffs' contention that the Board is not entitled to judicial immunity because the actions of the Board after the ALJ's decision in favor of Ms. Thome were not judicial actions or were outside of the Board's authority.  According to the plaintiffs, after the ALJ's decision, "the board members made the administrative decision to re-investigate, amend and sanction Ms. Thome with an entirely new count confidentially, without providing her any due process." *Response*, pp. 6 - 7.  The plaintiffs allege other

8

actions by the Board that were allegedly abusive and procedurally improper. Whether procedurally improper of not, the actions of the Board described in the complaint all constituted an inextricable part of the Board's prosecution and adjudication of the disciplinary charges against Ms. Thome. Thus, these actions were not taken in the clear absence of all jurisdiction. Under *Horwitz* and related authority, judicial and prosecutorial immunity shield the members of the Board from claims based on these actions.

On the other hand, one action allegedly taken by the Board does not necessarily fall within the scope of judicial or prosecutorial immunity. The plaintiffs allege that Ms. Rottersman and the Board tendered the Board's letter of admonition to the National Practitioner Data Bank and the Healthcare Integrity and Protection Data Bank. ¶ 92. According to Ms. Thome, the letter of admonition included falsehoods, including a statement that Ms. Thome violated Rule 18(g). The record in this case does not indicate if the Board was obligated to report its letter of admonition to these data banks and does not indicate if any specialized immunity provisions are applicable to the tender of information to these data banks. For the purpose of resolving the motion to dismiss, I assume, without deciding, that if the tender was not mandated legally then the tender falls outside of the Board's judicial and prosecutorial immunities. With regard to all other actions of the Board as alleged in the complaint [#35], I conclude that the five defendants named as members of the Colorado Board of Licensed Professional Counselor Examiners are entitled to judicial and prosecutorial immunity as to the plaintiffs' claims against them in this case.

The plaintiffs name as defendants Mark Merrill, the Section Director for Alan Cook, Chair of the Board; Carlotta Knox, Program Director of the Board; and Rosemary

McCool, Director of the Division of Registration of the Colorado Department of Regulatory Agencies.  The plaintiffs contend these three defendants are liable based on actions they took in relation to the disciplinary proceedings against Ms. Thome.  These alleged actions include participation by these defendants in meetings of the Board at which Ms. Thome's case was discussed, ¶¶ 71, 86, 95, Mr. Merrill's signing of the Clarified Final Board Order on December 28, 2010, and Ms. McCool's approval of Mr. Merrill's signature, ¶ 98, and Ms. McCool's presentation to the Board of a "package" calling for the imposition of a Rule 18(g) sanction against Ms. Thome, even though Ms. McCool knew such an action was prohibited.  ¶¶ 114, 115, 119.

The defendants argue that Mr. Merrill, Ms. Knox, and Ms. McCool are entitled to judicial immunity.[4]  Generally, absolute judicial immunity extends to non-judicial officers performing discretionary judicial acts.  ***Whitesel v. Sengenberger***, 222 F.3d 861, 869 (10th Cir. 2000).  Such actions include ministerial acts undertaken at the direction of a judge.  *Id*. (***citing Valdez v. City & County of Denver***, 878 F.2d 1285, 1287 - 1288; ***Rogers v. Bruntrager***, 841 F.2d 853, 856 (8th Cir.1988) (concluding deputy clerk entitled to absolute immunity from suit for issuing an arrest warrant at the direction of the assistant circuit judge); ***Tarter v. Hury***, 646 F.2d 1010, 1013 (5th Cir.1981) (court clerks have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction)).

As described in the complaint, the actions of Mr. Merrill, Ms. Knox, and Ms. McCool constitute actions taken by staff members of the Board and the Department of Regulatory Agencies which are an integral part of the Board's prosecution and

---

[4] The defendants raise this argument in their initial motion to dismiss [#10], which addressed the plaintiffs' initial complaint.  The defendants incorporate their initial motion to dismiss [#10] into their present motion.  I have considered also the plaintiffs' response [#14] to the initial motion to dismiss.

10

adjudication of the disciplinary action against Ms. Thome. The plaintiffs do not allege that these three defendants played any role in tendering the letter of admonition to the data banks. Thus, I conclude that Mr. Merrill, Ms. Knox, and Ms. McCool are entitled to judicial and prosecutorial immunity.

### B. Prosecutorial Immunity

The plaintiffs name Laurie Rottersman as a defendant based on her role as an Assistant Attorney General (AAG) of the State of Colorado. Ms. Rottersman was the attorney who represented the Board during the prosecution of the administrative charges against Ms. Thome, during the time the Board issued its orders, and during Ms. Thome's appeal to the Colorado Court of Appeals. Ms. Rottersman claims she is shielded from the plaintiffs' claims by prosecutorial immunity.

It is well established that prosecutors are absolutely immune from suit under section 1983 concerning activities "intimately associated with the judicial ... process," such as initiating and pursuing criminal prosecutions. ***Imbler v. Pachtman***, 424 U.S. 409, 430-31 (1976); ***see Snell v. Tunnell***, 920 F.2d 673, 686 (10th Cir.1990). "The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grant jurors acting within the scope of their duties." ***Imbler***, 424 U.S. at 422 - 423. Prosecutorial immunity is applicable even if it leaves "the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." ***Imbler***, 424 U.S. at 427; ***See also Cambell v. Maine***, 787 F.2d 776, 778 (1st Cir.1986) (no bad faith exception to absolute immunity of prosecutor). A prosecutor is entitled to absolute immunity

> for those actions that cast him in the role of an advocate initiating and

11

> presenting the government's case. Absolute immunity, however, does not extend to those actions that are investigative or administrative in nature, including the provision of legal advice outside the setting of a prosecution.

**Mink v. Knox**, 613 F.3d 995, 999 (10th Cir. 2010).

Absolute prosecutorial immunity

> extends to attorneys and officials of state agencies who perform functions analogous to those of a prosecutor in initiating and pursuing administrative enforcement proceedings. **See Butz v. Economou**, 438 U.S. 478, 509, 515-17, 98 S.Ct. 2894, 2912, 2915-16, 57 L.Ed.2d 895 (1978) (agency enforcement proceedings); **Meade v. Grubbs**, 841 F.2d 1512, 1532 n. 18 (10th Cir.1988) (civil proceeding). The rationale for granting absolute immunity in each of these instances is to allow prosecutors and those performing equivalent functions "the latitude to perform their [quasi-judicial] tasks absent the threat of retaliatory section 1983 litigation." **Snell**, 920 F.2d at 686-87; **see Imbler**, 424 U.S. at 424-26, 96 S.Ct. at 992-93.

**Pfeiffer v. Hartford Fire Ins. Co.**, 929 F.2d 1484, 1489-90 (10th Cir. 1991).

**Pfeiffer** concerned civil rights claims against Colorado assistant attorney generals based on their prosecution of administrative disciplinary proceedings by the Colorado Board of Medical Examiners against the plaintiff, a physician,.  In **Pfeiffer**, the United States Court of Appeals for the Tenth Circuit held that the investigation and prosecution of disciplinary proceedings by a Colorado Assistant attorney general on behalf of the Colorado Board of Medical Examiners against a physician are actions that fall within the protection of prosecutorial immunity.

> (W)e and other courts have recognized that absolute immunity may attach even to . . . administrative or investigative activities "when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." **Snell,** 920 F.2d at 693; **see Gobel v. Maricopa County**, 867 F.2d 1201, 1204 (9th Cir.1989) (actions taken as part of prosecutor's preparation of case are absolutely immune even if such actions could be characterized as investigative or administrative); **see Imbler**, 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33. In making the difficult distinction between these prosecutorial and nonprosecutorial investigative and administrative activities, "the determinative factor is 'advocacy' because that is the prosecutor's main function and the one most akin to his quasi-judicial

12

> role." ***Rex***, 753 F.2d at 843. Thus, the more distant a function is from the judicial process and the initiation and presentation of the state's case, the less likely it is that absolute immunity will attach. ***See Snell***, 920 F.2d at 687.

***Pfeiffer***, 929 F.2d at 1490 (footnote omitted).

The proceedings at issue in ***Pfeiffer*** are directly analogous to the proceedings at issue in this case.  In large part, the allegations in the complaint describing the actions of Ms. Rottersman constitute alleged actions that fall within the broad prosecutorial immunity accorded to her under ***Pfeiffer*** and the related case law summarized above. The only possible exception to this is Ms. Rottersman's alleged role in tendering the Board's letter of admonition to the data banks.  As discussed above, the current record is not sufficiently detailed to make a determination of whether this action falls within the ambit of judicial and prosecutorial immunity.  Thus, with the exception of claims based on Ms. Rottersman alleged role in tendering the letter of admonition to the data banks, all other claims against Ms. Rottersman must be dismissed based on prosecutorial immunity.

### C.  Governmental Immunity Act & Adequacy of Pleading

Under the Colorado Governmental Immunity Act (CGIA), "no public employee shall be liable for injuries arising out of an act or omission occurring during the performance of his or her duties and within the scope of his or her employment, unless such act or omission was willful and wanton, except as provided in this article." §24-10-104(1), C.R.S.  Under §24-10-118(2)(a), C.R.S., this immunity may not be asserted in an action for injuries resulting from the circumstances specified in §14-10-106(1), C.R.S.  None of those circumstances is applicable to this case.  "The question whether immunity has been waived under the GIA is an issue of subject matter jurisdiction."

***Reynolds v. State Bd. for Cmty. Colleges & Occupational Educ.***, 937 P.2d 774, 777 (Colo. Ct. App. 1996).

The plaintiffs name public employees as defendants and base their state law claims on alleged actions by those employees undertaken during their performance of their duties. The plaintiffs' claims are barred by the CGIA unless the plaintiffs have alleged that the defendants' actions were willful and wanton. A willful and wanton act is "an act or omission purposefully committed by a person who must have realized that the conduct was dangerous, and which conduct was done heedlessly and recklessly, either without regard to the consequences, or without regard to the rights and safety of others, particularly the plaintiff." CJI-Civ. 4th 9:30.

Section 24-10-110, C.R.S. provides specific pleading requirements for a claim based on alleged willful and wanton action by public employee.

> (5)(a) In any action in which allegations are made that an act or omission of a public employee was willful and wanton, the specific factual basis of such allegations shall be stated in the complaint.
>
> (b) Failure to plead the factual basis of an allegation that an act or omission of a public employee was willful and wanton shall result in dismissal of the claim for failure to state a claim upon which relief can be granted.

To surmount the broad protection of the CGIA, the plaintiffs must plead specific facts showing that the defendants' challenged actions were willful and wanton. Given the broad protections of judicial and prosecutorial immunity, I focus on the possibility that one or more claims may be viable based on the publication of the letter of admonition to the data banks. In her first claim for relief under § 1983, the plaintiffs allege generally that the defendants acted willfully and wantonly. ¶ 151. As pled, this allegation is confined to a claim under federal law, a claim not controlled by the CGIA.

Paragraphs 128 and 129 of the complaint are as close as the plaintiffs come to pleading willful and wanton action related to their claims under state law:

> 128. With the exception of Ms. Taylor and maybe other Board members, the Defendants conspired to "get" Ms. Thome regardless of their own rules and the constitution. Defendants actions were *ultra vires*.
>
> 129. Defendants knew what they were doing was unlawful and in violation of Ms. Thome's rights, prohibiting immunity.

Under the standards established in **Twombly**, **Iqbal**, and related cases, and in §24-10-110(5)(a), the allegations in the complaint are not sufficient to plead willful and wanton conduct by the defendants, particularly with regard to the tender of the letter of admonition to the data banks. The allegations above describe the actions and motivations of the defendants as a group, rather than describing the actions and motivations of specific defendants. Paragraph 128 muddies the water further by acknowledging the possibility that some defendants may not have had the motivations described in these paragraphs. These allegations are too general to attribute willful and wanton action to any individual defendant. In the context of this complaint, such group pleading is not sufficiently specific to plead willful and wanton action by any one or more of the defendants. **See Robbins v. Oklahoma**, 519 F.3d 1242, 1250- 1251 (10th Cir. 2008). As currently pled, the plaintiffs' claims do not overcome the broad immunity granted to public employees under the CGIA.

Finally, I note that is not clear whether the plaintiffs seek to assert a claim under federal law based on the alleged tender of the letter of admonition to the data banks. Based on this lack of clarity and specificity, I conclude that any federal claim the plaintiffs seek to assert based on the alleged tender of the letter of admonition has not been pled with the specificity required by **Twombly**, **Iqbal**, and related cases.

## VI. CONCLUSION & ORDERS

The broad protections of judicial and prosecutorial immunity shield the defendants from the claims of the plaintiffs based on actions taken by the defendants in the course of the disciplinary proceedings against Ms. Thome. The only alleged action by the defendants that might fall outside the ken of these broad immunities is the tender of the letter of admonition to the data banks. The current record is not sufficient for the court to make a determination about whether this particular action falls within the ambit of judicial or prosecutorial immunity. In any case, the plaintiffs' claims based on the tender of the letter of admonition to the data banks must be dismissed because the allegations in the complaint are not sufficient to alleged willful and wanton action by any one or more of the defendants.

**THEREFORE, IT IS ORDERED** as follows:

1. That the defendants' **Defendants' Motion to Dismiss First Amended Complaint Based on Absolute and Qualified Immunity and for Lack of Subject Matter Jurisdiction** [#64] filed June 20, 2012, is **GRANTED** as follows;

2. That under FED. R. CIV. P. 12(b)(6), all claims asserted by the plaintiffs based on actions taken by the defendants in the course of the administrative disciplinary proceedings by the Board concerning Penelope Thome's license to practice as a professional counselor and during Ms. Thome's appeal to the Colorado Court of Appeals are **DISMISSED** with prejudice because the defendants are shielded by judicial and prosecutorial immunity;

3. That under FED. R. CIV. P. 12(b)(1) and (6), all claims asserted by the plaintiffs based on the tender of the letter of admonition to the National Practitioner Data Bank

and the Healthcare Integrity and Protection Data Bank are **DISMISSED** without prejudice; and

4.  That if the plaintiffs wish to file an amended complaint to re-plead the claims dismissed without prejudice, the plaintiffs **SHALL FILE** an amended complaint by April 8, 2013.

Dated March 19, 2013, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge